## JIREH STEARNS *et al. versus* JAMES FOOTE.

In assumpsit the plaintiffs declared on a written contract between themselves and the defendant, alleging that he agreed to sell and deliver to them all the wool he should cut annually for five years from his flock of sheep, and the wool which should be cut during the same period from the flocks of his two sons ; and in support of the declaration the plaintiffs produced a written agreement, purporting to be an agreement between the defendant, of the one part, and the plaintiffs, of the other, but signed by the defendant's two sons as well as by himself, in which the defendant agrees to sell and deliver the wool, as stated in the declaration ; and it is also stipulated, that the sons shall improve their flocks in a certain manner, and retain the increase, and that the fleeces of the increase shall be delivered to the plaintiffs ; and the plaintiffs agree to pay the defendant and his sons at a certain rate per pound. *Held*, that there was no variance, because the agreement was the sole contract of the defendant, or if his sons were parties, yet the promise declared on was the sole contract of the defendant.

Though one of the sons owned his flock in common with a stranger, yet as the stranger had let his moiety to the son, and the whole of the wool was sheared by the son and was his property, it was *held*, that the whole, and not merely a moiety, of the wool, was included in the defendant's contract.

An agreement that a stranger shall convey property to another, is a valid contract, although the promisor may perhaps be unable to fulfil it.

ASSUMPSIT. The declaration sets forth, that the defendant, on June 1, 1833, by his memorandum in writing, agreed to sell and deliver to the plaintiffs all the wool he should cut annually, for five years from June 1, 1833, from his flock

of sheep, also the wool which should be cut annually from the flocks of his two sons, Daniel Foote and Asaph D. Foote, for five years from June 1, 1833, together with the wool produced within that period by the increase of the flocks. The alleged breach of the contract is the non-delivery of the wool from the shearings of the several flocks for the year 1836.

At the trial, before *Morton* J., the plaintiffs offered in support of the declaration, a written agreement, which was signed by James, Daniel, and Asaph D. Foote and the plaintiffs. This agreement was as follows ; "Memorandum of a contract between James Foote, of Pittsfield, of the one part, and Jireh Stearns & Brothers of the other, &c. The said Foote covenants and agrees to sell and deliver to J. Stearns & Brothers all the wool he shall cut annually for five years from June 1, 1833, so as to take five successive shearings, and also his two sons' shearing, one in Dalton and the other in Washington, together with their increase, &c. And the said Foote and sons are to keep for rams the best of Merino and Saxony bucks, &c. said Footes are to sell no sheep from their flocks, but the oldest and coarsest wethers and ewes ; all the lambs, yearling and two years old, whether wethers or ewes, are to be retained in their flocks and their fleeces delivered as above mentioned. Said Stearns & Brothers are to pay said Foote and sons for the wool so delivered to them on this contract, fifty cents a pound, payable as follows, — to give their notes to said Foote and sons," &c.

The defendant objected to the introduction of this agreement, on the ground that it varied from the contract set out in the declaration, inasmuch as it showed a contract between the plaintiffs and the defendant with others ; but the objection was overruled.

The defendant then insisted that the plaintiffs could not, under the contract, claim of him, in this action, damages for non-delivery of any wool, except that which was cut from the flock owned by him ; but it was ruled, that the flocks of Daniel and Asaph Foote might be included.

It appeared that, at the time of making the contract, James Foote junior owned in common with Asaph, one flock of sheep and the farm on which they were kept ; that in 1834 he sold

his moiety of the farm to Asaph, and agreed with him that the sheep should remain upon the farm until he called for them; that while they thus remained upon the farm, Asaph was to have all the wool which grew upon them, and was to have a right to use and dispose of them as he pleased but that whenever James should request it, he was to deliver ,o him the same sheep or others of equal value. Under this agreement the sheep remained upon the farm during the years 1834, 1835 and 1836. The defendant admitted that the wool taken from this flock was the property of Asaph, but contended that only one half of it was included in the contract. But the judge ruled that the whole was included.

The jury returned a verdict for the plaintiffs. The defendant excepted to the foregoing instructions If any one of them was wrong, a new trial was to be granted; otherwise judgment was to be rendered on the verdict.

The case was submitted without argument.

*Rockwell*, for the plaintiffs.

WILDE J. delivered the opinion of the Court. The defendant is charged with the breach of a contract in writing, whereby he undertook and promised the plaintiffs, among other things, to sell and deliver to them all the wool he should cut annually for five years from and after the first day of June, 1833 ; also all the wool which should be cut annually from the flocks of his two sons, Daniel Foote and Asaph D. Foote, for the same time. By the contact offered in evidence on the trial, it appears that it was signed not only by the plaintiffs and defendant, but also by the defendant's two sons above named. The defendant objected to the introduction of this contract, as being variant from that set out in the declaration ; but the objection was overruled, and we think the ruling was clearly right.

On the face of the contract it is declared to have been made by the defendant of the one part, and the plaintiffs of the other part. This clause conclusively shows that they alone were the contracting parties, and controls the subsequent language of some parts of the contract, by which it might otherwise be inferred, perhaps, that the defendant and his two sons were joint contractors. But if that were the case as to some parts of the

contract, still this action might be maintained, for the promise set out in the declaration is expressly made by the defendant alone. If the signing of the contract by the defendant's two sons has any legal effect, it would only be evidence of a parol promise of the sons to their father to coöperate with him for the purpose of enabling him to fulfil his contract with the plaintiffs. But however this may be, it is very clear that the promise on which this action is founded, is, in express terms, the sole promise of the defendant.

The other exceptions to the decisions of the presiding judge at the trial, appear to us to be equally unfounded. It has been argued that as the defendant could not make a valid sale of property belonging to his sons, his agreement or promise to make such a sale at a future time must consequently be a void promise. But this consequence does not follow, for he might have procured a title, and if he has failed so to do, he is responsible in damages. An agreement that a stranger shall convey property or perform services for another, is a valid contract, although the promisor may perhaps be unable to fulfil it. [*Vide Ante*, 105.]

It was also argued, that as Asaph Foote owned his flock in common with James Foote junior, the plaintiffs are entitled to recover under the contract only a moiety of the wool. But it was proved that James had let his share of the flock to Asaph during the years 1834, 1835 and 1836, and that the whole wool during those years was sheared by Asaph and was his property. It was therefore clearly included in the contract.

*Judgment on the verdict.*